**MUSTANG ENTERPRISES, INC., Plaintiff,**

v.

**PLUG–IN STORAGE SYSTEMS, INC., Defendant.**

**No. 94 C 6263.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 20, 1995.

---

Lewis T. Steadman, Robert M. Ward & Melvin A. Robinson, Hill, Steadman & Simpson, Chicago, IL, for plaintiff.

Steven L. Underwood and Michael Piontek & Juettner Pyle Lloyd & Piontek, Chicago, IL, for defendant.

***MEMORANDUM OPINION AND ORDER***

SHADUR, Senior District Judge.

Plug–In Storage Systems, Inc. ("Plug–In") has moved to disqualify the law firm of Hill, Steadman & Simpson ("Hill Firm") as counsel for Mustang Enterprises, Inc. ("Mustang") in this patent action. At this point the parties have briefed the issues that this Court had identified—issues that, though not exhaustive of the grounds on which the motion might be granted, could well be sufficient for that purpose. That limitation on the issues required to be briefed has proved to be appropriate. For the reasons stated in this memorandum opinion and order, the motion is granted.

*Facts*

Hill Firm is a Chicago-based intellectual property firm of some 30 lawyers. Bachman & LaPointe P.C. ("Bachman Firm") is a New Haven, Connecticut firm of four lawyers that is affiliated with Hill Firm:

1. On the right-hand masthead of Hill Firm's letterhead (Plug–In Motion Ex. M) it lists, immediately below the addresses and telephone numbers of its own Chicago and Washington, D.C. offices, "Affiliated Firm Bachman & LaPointe, P.C.,"[1] followed by the names of all four Bachman Firm lawyers (in just the same way that the left-hand masthead lists Hill Firm's own partners, associates and its lawyers related on an of-counsel basis) and by Bachman Firm's address and telephone number.

2. On the right-hand masthead of Bachman Firm's letterhead (Plug–In Motion Ex. Q) it lists "Affiliated Firm Hill, Steadman & Simpson," followed by the addresses and telephone numbers of the Chicago and Washington, D.C. offices of Hill Firm.

3. Beginning with the 1988 edition of Martindale–Hubbell, Hill Firm's listing has included, just below the information as to its own Chicago office, the address and telephone number of its "Arlington, Virginia Office" and then (in an identical type size, style and format) the information as to its "New Haven, Connecticut Affiliated

1. That listing (on two lines) is in the identical type size and format as the listing of Hill Firm's Chicago and Washington offices, with the line reading "Affiliated Firm" occupying a position that corresponds exactly to the lines reading "Chicago Office" and "Washington Office." In short, the listing is exactly the same in appearance as if Bachman Firm were Hill Firm's own New Haven office.

Office"—Bachman Firm's name, address and telephone number.

4. Also beginning with the 1988 edition Bachman Firm's Martindale–Hubbell listing has referred to its "Chicago, Illinois Affiliated Office"—giving Hill Firm's name, address and telephone number.

Since 1991 Bachman Firm has been retained by Plug–In as its patent counsel. When all of the legal files were transferred to Bachman Firm from the law firm that had previously been retained by Plug–In, those files included a substantial number of documents dealing with the patents in suit in this litigation (in which Mustang seeks a declaratory judgment as to noninfringement of two Plug–In patents by Mustang's current product or, if the patents are read so that infringement exists, a declaration that the patents are invalid as so read). Indeed, Plug–In's most recent submission [2] discloses that the documentation delivered to Bachman Firm included among other things (1) papers from the prior 1986 litigation between Plug–In and Mustang dealing with one of those patents, including an extended opinion letter on the subject from the former lawyer for Plug–In, (2) a 1990 letter from Plug–In's former counsel to a Japanese law firm discussing at length the proposed registration of one of the two patents now in suit, together with a series of later communications on the same subject, and (3) correspondence dealing with Canadian patents corresponding to the United States patents now in suit.

Bachman Firm is still in possession of the documents, and Plug–In is still Bachman Firm's client. It is really unnecessary to go further to recognize that if Bachman Firm were directly handling the current litigation on Mustang's behalf it would be improperly advantaged by knowledge of the information in its possession—and, as the ensuing discussion reflects, it would therefore be disqualified from representing Mustang.

*Effect of Bachman Firm's Affiliation with Hill Firm*

Since November 12, 1991 a version of the Rules of Professional Conduct (adapted from the American Bar Association's Model Rules and from the Illinois Supreme Court's version of those rules) has been in effect in this District Court. Because of this Court's extensive background as a practitioner in the area of lawyers' professional responsibility,[3] it had been assigned the task of drafting a proposed set of those Rules for adoption by its colleagues. That assignment included consideration of the extent to which this District Court should adhere to the ABA version or, where the Illinois Supreme Court had departed from the Model Rules in its own early 1990 adoption, to adhere to that Illinois departure.

Here is the Rule most relevant to the current dispute—Rule 1.10(a), which this District Court adopted in the identical language that has been employed in the Illinois version:

> No lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by Rules 1.7, 1.8(c) or 1.9, except as permitted by Rules 1.10(b), (c), or (d), or by Rule 1.11 or Rule 1.12.

2. At the same time that it filed its responsive memorandum on the subject now under discussion, Hill Firm filed a motion to compel Plug–In to produce a listing of privileged documents maintained by Bachman Firm and requesting an order for the deposition of Bachman Firm regarding its legal representation of Plug–In. In opposition to that motion (which this Court denied when it was presented in open court), Plug–In has in part submitted what it labels "Partial Privilege Log of Documents in Possession of PSSI's Attorneys Bachman & LaPointe." That has led Hill Firm's counsel to withdraw the first part of its motion.

3. Plug–In's counsel has heightened an already-triggered sense of deja vu by citing an article that antedated this Court's appointment to the bench: Milton Shadur, *Lawyers' Conflicts of Interest: An Overview,* 58 Chi.B.Rec. 190 (1977) (at that time this Court was serving as Chairman of the Chicago Bar Association's Committee on Professional Responsibility). During that same time frame this Court had occasion to work with the ABA's Committee on Professional Responsibility on a frequent basis, and it also handled a substantial amount of legal representation of other lawyers and law firms in that area of law.

That provision departed somewhat from the ABA Model Rules' version of Rule 1.10(a), which reads:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

But that departure did not carry any intended change in meaning for present purposes. Here is how the Illinois Supreme Court's Committee on Professional Responsibility (chaired by George Overton, Esq.), which was responsible for generating the draft text submitted to the Supreme Court in June 1989 and thereafter adopted by that Court, spoke of the source of Illinois Rule 1.10:

> Illinois Rule 1.10 is largely a Committee draft, although much language has been borrowed from ABA Model Rule 1.10.

Rule 1.10(a) roughly tracks ABA Model Rule 1.10(a). And the only departures from the ABA version then referred to by the Illinois Supreme Court's Committee are entirely irrelevant to the current controversy.

Although the Illinois Supreme Court chose not to adopt any of the ABA Comments in addition to the Rules themselves (just as the Illinois Supreme Court had never adopted the Ethical Considerations that had accompanied the ABA's predecessor Model Code of Professional Responsibility), this District Court viewed those Comments as a valuable adjunct to the Rules and to their interpretation. Accordingly it adopted the Comments contained in the ABA Model Rules, except to the extent that those Comments required modification to reflect this District Court's departures from the ABA version in favor of the language of the Illinois version of the Rules or some other modification. In this instance, for example, this District Court adopted the ABA's Comment to Rule 1.10, including that Comment's definition of a "firm." But importantly for current purposes, this District Court also adopted the following definition as part of its own Comment—a definition not contained in the ABA Comment—as the result of a recommendation contained in the October 3, 1991 report by this District Court's Advisory Committee on Rules and Procedure:

> **Definition of "Associated"**
>
> As used in this Rule the term "associated," e.g., "newly associated lawyer," "a lawyer becomes associated with a firm," shall be read to cover all forms of association between the lawyer and the firm, including, but not restricted to partner, associate, and of counsel.

Obviously the first (and indeed the most critical) issue before this Court is the scope to be given to the concept of being a "lawyer associated with a firm." Does that concept embrace the notion of lawyers who are members of firms that are "affiliated" with the firm under consideration? Although neither side has proffered any case law expressly dealing with that question, insights are available from Rule 1.10(a) and other Rules, the Comment and some related cases.

As for the Rules and the Comment themselves, their use of the term "associated" plainly reflects a broad-brush approach intended to sweep up all nature of lawyer associations, rather than its being limited to traditional law partnership status or to the more recent professional corporation shareholder status. That is obvious not only from the inclusion of the often amorphous "of counsel" relationship in the notion of "associated" lawyers but also in this District Court's determination in its own Comment that the term "associated ... shall be read to cover *all* forms of association between the lawyer and the firm, *including, but not restricted to,* partner, associate and of counsel" (emphasis added).

Even though no reported court decision has dealt with the relationship of "affiliated" firms, on October 20, 1984 the ABA's Committee on Professional Responsibility issued Formal Opinion 84–351 in response to an inquiry as to whether a law firm could designate another law firm as "affiliated" or "associated" without running afoul of either the ABA's Model Rules or the predecessor Model Code. That Committee's response was that no violation was involved "as long as the relationship between the firms is such that the communication [by listing on the firm letterhead] is not false or misleading and the

law firms adhere to the applicable rules regulating disclosure of confidential information and conflicts of interest as if they were a single firm." In support of that conclusion the Committee said in part (citations omitted, emphasis added):

> There is a trend for more lawyers and firms to practice in multiple states. Where lawyers or firms practice together regularly, particularly in the multi-state practice, but not as a single firm, communication of the relationship that exists between the firms as "affiliated" or "associated" can in appropriate circumstances provide information that is useful to clients and to potential clients as an aid in selecting a law firm. An absolute prohibition of such a listing is not justified.
>
> * * * * * *
>
> The basic requirement regarding lawyer advertising under both the Model Rules and the Model Code is that communications by a lawyer concerning legal services must not be false or misleading. Model Rule 7.1; DR 2–101(A). Thus, designation by a lawyer or law firm of another law firm on a letterhead or in any other communication, including any private communication with a client or other person, as "affiliated" or "associated" with the lawyer or law firm must be consistent with the actual relationship. Communication that another law firm is "affiliated" or "associated" is not misleading if the relationship comports with the plain meaning which persons receiving the communication would normally ascribe to those words or is used only with other information necessary adequately to describe the relationship and avoid confusion. An "affiliated" or "associated" law firm would normally mean a firm that is closely associated or connected with the other lawyer or firm in an ongoing and regular relationship.
>
> The question remains whether either of these terms has acquired some special meaning that would cause confusion when the term is applied to a law firm. "Associate" frequently refers to an individual lawyer employee of a firm. See Formal Opinion 330. In another context, a lawyer or law firm sometimes is said to be "associated" with another lawyer or firm in a specific lawsuit or other one-time endeavor. In those instances, however, the meaning is clear to persons who need to understand the relationship, and the Committee sees little likelihood of confusion with these uses of "associated" firms resulting from letterhead references to an "associated" firm.
>
> The type of relationship that is implied by designating another firm as "affiliated" or "associated" is analogous to the ongoing relationship that is required by Model Code DR 2–102(A)(4) when using the designation "Of Counsel" as amplified by the guidelines in Formal Opinion 330 and Informal Opinion 1315. The relationship must be close and regular, continuing and semi-permanent, and not merely that of forwarder-receiver of legal business. The "affiliated" or "associated" firm must be available to the other firm and its clients for consultation and advice.
>
> * * * * * *
>
> When a law firm lists another as "affiliated" or "associated" with it, potential clients of the listing firm are led to believe that lawyers with the "affiliated" or "associated" firm are available to assist in the representation, at least in matters that the designation may describe. *The client ordinarily also expects that lawyers of the "affiliated" or "associated" firm will not simultaneously represent persons whose interests conflict with the client's interests, just as would be true of lawyers who occupy an "Of Counsel" relationship with the firm.*
>
> Rule 1.9 follows the vast majority of cases in creating an irrebuttable presumption that present affiliates will share a former client's confidences where the adverse representations are in substantially related matters. The use of the "Chinese Wall" approach to screen confidential information has generally failed. See Ibid., and cases cited there.
>
> The Committee believes that the same rationale applies where law firms hold themselves out as "affiliated" or "associated" with one another as applies, under the Model Rules and the foregoing cases,

where conflicts arise within law firms. *When a firm elects to affiliate or associate another with it and to communicate that fact to the public and clients, there is no practical distinction between the relationship of affiliates under that arrangement and the relationship of separate offices in a law firm. Under both the Model Rules and the Model Code, the Committee would ordinarily apply the same analysis to both arrangements to determine when the firms have a disqualifying conflict of interest treating the "affiliated" or "associated" firms for this purpose as a single firm.*

That reference to treating "affiliated firms" in the same manner as separate offices in the same firm brings several Seventh Circuit decisions into play. First of those is *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311 (7th Cir.1978), a decision with which this Court had more than a passing familiarity before taking the bench.[4] There the prior representation of an industry association by lawyers in the Washington office of a Chicago-based law firm—a matter that was never worked on by any lawyer in the principal Chicago office of the firm, and in fact was really unknown to the Chicago-based lawyers—was held to preclude the Chicago office from representing a client in suing members of that association (580 F.2d at 1319–22).

*Westinghouse* dealt with a law firm's simultaneous representation of clients having opposing interests. In this instance Bachman Firm currently represents a client—Plug–In—against whom Hill Firm (Bachman's affiliated firm) has brought a lawsuit on behalf of another client. Hill Firm interposes a number of contentions in an effort to blunt the force of those facts, including its persistent emphasis on the notion that the two representations are "unrelated." But even if that were so (a matter discussed a bit later), it would really create no conceptual difference, for the prohibition against such simultaneous representation even in *unrelated* matters is based on the fundamental concept that lawyers owe undivided loyalties to their clients. Indeed the earliest leading case on that subject has long been a Connecticut decision of which at least Bachman Firm must have been deemed to be aware, *Grievance Comm. v. Rottner*, 152 Conn. 59, 203 A.2d 82 (1964); accord under the predecessor Code of Professional Responsibility, such cases as *IBM v. Levin*, 579 F.2d 271, 279–80 (3d Cir.1978) and *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386–87 (2d Cir.1976).

No change in that fundamental proposition has been made by the adoption of the Rules. Thus Rule 1.7(a) says:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after disclosure.

And the Comment to that Rule states (with the exceptions to "ordinarily" not being relevant here):

> Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated.

Similarly, the Comment to Rule 1.10(b) states (emphasis added):

> Rule 1.10(b) operates to permit a law firm, under certain circumstances, to represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm. The rule applies regardless of when the formerly associated lawyer represented the client. *However, the law firm may not represent a person with interests adverse to those of a present client of the firm, which would violate Rule 1.7.*

What has been said to this point demonstrates that Hill Firm's disqualification would be called for even if there were no "substantial relationship" between the client information in Bachman Firm's possession and the

4. One of the last major matters that this Court handled before its appointment to the District Court in mid–1980 was as counsel for the large law firm that our Court of Appeals held to have been disqualified in *Westinghouse*. This Court was retained after the disqualification decision to represent the firm and its principal partners in related matters arising out of the disqualification.

subject matter of the current litigation. But that result is also called for as an independent matter because Hill Firm is wrong in its insistence that no such "substantial relation" exists here.

In that respect Hill Firm urges (its Mem. 2) that Mustang's currently manufactured structure is a legally different embodiment from the one that was the subject of the earlier litigation that led to a settlement between the same parties that are now in the present lawsuit. But even if that is assumed to be true, it poses a situation very different from that in which the scope of a discrete prior representation has delivered a limited amount of information about a client to a law firm, so that it is unlikely to be aided in its current representation of another client against its former client. In this instance the nature of Bachman Firm's representation of Plug–In is that it has been provided with the client's *entire* file relating to patents. It cannot be gainsaid that Bachman Firm is thus in possession of confidential information that *could* be of substantial value to anyone trying to attack the Plug–In patents in suit from any perspective—Bachman Firm's access to the earlier internal legal memoranda is just one example of that.

Thus even the concept of representations that are "substantially related"—a concept that, it should be emphasized, need not be met to cause *Bachman Firm* to be disqualified if it sought to represent Mustang here—is not at all as narrow as Mustang portrays it. As *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983) (numerous citations omitted, emphasis added) has put the matter:

For rather obvious reasons a lawyer is prohibited from using confidential information that he has obtained from a client against that client on behalf of another one. But this prohibition has not seemed enough by itself to make clients feel secure about reposing confidences in lawyers, so a further prohibition has evolved: *a lawyer may not represent an adversary of his former client*[5] *if the subject matter of the two representations is "substantially related," which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second.* It is irrelevant whether he actually obtained such information and used it against his former client, or whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two matters and scrupulously avoided discussing them.

From either of two perspectives, then, there is no question that Bachman Firm could not take on the current lawsuit on behalf of Mustang against Plug–In. What remains for resolution is whether that disqualification is also imputed to its "affiliated firm" Hill Firm. For that purpose the existence or nonexistence of a "Chinese wall" would make no difference whatever if Hill Firm and Bachman Firm were regarded as the equivalent of two offices of the same law firm, because in that event the firm itself would be regarded as having switched sides (*Analytica,* 708 F.2d at 1267, citing and relying on *Westinghouse,* 580 F.2d at 1321; contrast the individual-lawyer-switching situation as discussed in *Schiessle v. Stephens,* 717 F.2d 417, 420 n. 2 (7th Cir.1983)).[6]

5. [Footnote by this Court] Obviously what is said in the text applies a fortiori where, as here, the question is whether the lawyer (or in this case the law firm) may represent an adversary of a *present* client.

6. Mustang's Memorandum seeks to place repeated emphasis on *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed.Cir.1984) (per curiam), which reviewed and applied Seventh Circuit law to a motion to disqualify counsel. But *Panduit* involved circumstances very different from those presented here: the switch of an individual from one firm to another, and the resultant question whether an infectious taint was to be imputed downstream from the former firm to the individual lawyer (who had never worked on matters for the client in question) and then upstream from that individual lawyer to the new firm. Thus the Seventh Circuit cases that *Panduit* examined were those dealing with *lawyers* who move from firm to firm, not with the very different situation discussed in this opinion. And even were that not the case, with all respect what another court has or has not said (necessarily second-hand) about Seventh Circuit law must be given less weight than what our Court of Appeals has said itself.

In legal terms the question is whether "affiliated firms" are to be treated as the equivalent of two offices of the same firm as a matter of law, rather than the answer to that question being based on a factual inquiry as to how the relationship may have impacted on the case under consideration. ABA Formal Opinion 84–351 has given that question a "yes" answer unless the "affiliated" designation is qualified in some manner such as the following (this is the portion of that Opinion that occupies the space indicated by * * * between the second and third excerpts quoted earlier):

> Availability may be on a limited basis if, for instance, the "affiliated" or "associated" firm performs all of the tax, labor, patent or other specialized work for the other firm. Availability may also be limited to performing legal services that have a relationship to or must be performed in another state. More descriptive language may be required to explain the precise relationship between the firms and to avoid misleading clients and others. For example, a firm might be described as "available for association on all tax matters," if that is true and tax work is the only work that its members will perform for clients of the other firm. An out-of-state firm might be described as "associated" or "affiliated" on all matters in the particular state or pertaining to its law. Whether this further description is, itself, false or misleading depends on the actual relationship. Care must be used to describe the relationship precisely and with sufficient information that no material facts are omitted that are necessary to keep the description of the relationship from being misleading.

In this instance Hill Firm and Bachman Firm chose to use the "affiliated firm" designation and to broadcast it to the world of clients and potential clients without cabining it in any respect. They did so well after the issuance of Formal Opinion 84–351, which (like all such opinions) was publicly available to them.[7]

Hill Firm seeks to deflect the impact of that unlimited designation by urging the need for "a full factual inquiry ... on the subject of access" (its Mem. 10). Although it has apparently refused to accede to Plug–In's current request for a copy of the affiliation agreement between Hill Firm and Bachman Firm (a refusal that this opinion renders irrelevant), Hill Firm attaches to its Memorandum an affidavit from one of its shareholders, Thomas Ross.[8] But if an unlimited representation that firms are "affiliated" is indeed viewed as rendering those firms the legal equivalent of different offices of a single firm for conflict-of-interest principles, this further extended quotation from *Analytica,* 708 F.2d at 1269 (emphasis added) provides the complete answer:

> The "substantial relationship" test has its problems, but conducting a factual inquiry in every case into whether confidences had

7. This Court of course recognizes that ABA Formal Opinions are not binding authority, in the manner that a comparable Seventh Circuit decision would be. But despite Hill Firm's effort at Mem. 12–13 to disparage the Opinion that has been quoted at length here, it must be recognized that opinions as to the meaning of the Rules that are promulgated by the group responsible for drafting those Rules—a group that devotes itself entirely to issues of professional responsibility—should be viewed as persuasive. And that is so even apart from the potential that such opinions could perhaps be viewed as similar to judicial gloss on a statute, so that law firms that adopted the unlimited "affiliated firm" terminology after the Formal Opinion had already construed the term would have greater difficulty in disavowing the Formal Opinion's reading of the term. It is certainly worth adding that the criticisms that have been leveled at the Formal Opinion by the Hill Firm Memorandum reflect in part an ignorance of how the ABA Committee functions, and in principal part advance a parade of distinctions that are either flat-out incorrect or that represent distinctions without a difference. In any case, the bottom line here is that this Court has reached its decision itself, in part by ascribing a degree of persuasiveness to Formal Opinion 84–351.

8. Its Mem. 10 also seeks to rely on a portion of the definition of "Firm" contained in the Comment to this District Court's Rule 1.10. But any possible inference of the type that Hill Firm attempts to draw from that definition is unpersuasive—it will be recalled that the same definition of "Firm" is part of the ABA's Comment to its Model Rule 1.10 (in fact, that was the direct source that this Court drew upon in drafting the Rules for adoption by its colleagues), and ABA Formal Opinion 84–351 found nothing in that definition that called for any different analysis or conclusion.

actually been revealed would not be a satisfactory alternative, particularly in a case such as this where the issue is not just whether they have been revealed but also whether they will be revealed during a pending litigation. Apart from the difficulty of taking evidence on the question without compromising the confidences themselves, the only witnesses would be the very lawyers whose firm was sought to be disqualified (unlike a case where the issue is what confidences a lawyer received while at a former law firm), and their interest not only in retaining a client but in denying a serious breach of professional ethics might outweigh any felt obligation to "come clean." While "appearance of impropriety" as a principle of professional ethics invites and maybe has undergone uncritical expansion because of its vague and open-ended character, in this case it has meaning and weight. For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public—or for that matter the bench and bar—*by the filing of affidavits, difficult to verify objectively, denying that improper communication has taken place or will take place between the lawyers in the firm handling the two sides.* Clients will not repose confidences in lawyers whom they distrust and will not trust firms that switch sides as nimbly as [the firm in this case].

Before this opinion concludes, it is worth taking a figurative step backward to gain perspective on what is really involved here as a matter of principle. Law firms in different cities often enjoy informal relationships—during this Court's time in the practice, the small firm in which he was the senior active partner was privileged to share a number of such relationships that served as a frequent source of referrals of high-quality law practice, including one in which one of the most prestigious New York firms regularly referred to this Court's law firm any matters that required a primary Chicago presence or that would have posed conflict problems for the New York firm. Such a situation, which treats the relationship as a purely internal matter between the law firms and not one for public announcement, represents the "forwarder-receiver of legal business" relationship that Formal Opinion 84–351 contrasted with a publicly-issued "affiliated firm" representation.

But any firm that chooses to go farther by broadcasting "affiliated firm" status via means that serve as permissible lawyers' professional advertising—in this instance firm letterheads and Martindale–Hubbell listing—must be understood as seeking to serve its own purpose or purposes by such designation. And the most obvious purpose (though not necessarily the only one[9]) is to announce something that the law firm says it is capable of rendering as a service to clients: In this instance, "We can provide legal services in New Haven, Connecticut," in the same way that the cheek-by-jowl listing of Hill Firm's Washington office announces "We can provide legal services in Washington, D.C." Having chosen to obtain such benefits as it perceives to flow from that public listing, Hill Firm cannot complain that the "We" in both of those announcements is treated as having the same meaning. And that, in short, is why Formal Opinion 84–351 is right in treating an unconditional and unqualified "affiliated firm" announcement as equivalent to the existence of a two-office law firm for conflict-of-interest purposes.

When courts are called upon to determine whether disqualification should be imposed where a law firm changes sides, as a matter of principle they do not look into what *in fact* happens behind the doors of that law firm. Under the circumstances here, where the two firms involved have chosen to hold their "affiliated firm" relationship out to the world without limitation, all of the same principles and policies that have led courts to that

9. One potential added purpose, for example, might be to derive added stature from affiliation with a particularly well-known firm. There is no need to speculate on motives, however, because the universe of consumers or potential consumers of legal services learns only the *fact* of the announcement and not the reason why. And Formal Opinion 84–351 accurately reflects the conclusions that those clients or potential clients are objectively entitled to draw.

approach operate with equal force. In sum, taking all of the relevant factors into account, this Court concludes that disqualification of the Hill Firm as Mustang's counsel is appropriate.

### Conclusion

Accordingly Plug–In's.motion for disqualification of the Hill Firm is granted. Whatever benefits Hill Firm and Bachman Firm may view themselves as deriving from holding each other out as an "affiliated firm," the price that must be paid for deriving those benefits is the inability of either firm to litigate against clients of the other firm under circumstances such as those presented here.