**HEALTHNET, INC., Plaintiff,**

v.

**HEALTH NET, INC., Defendant.**

No. CIV.A. 2:01–0835.

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 5, 2003.

See also 2003 WL 43375.

Charles L. Woody, Clifford F. Kinney, Jr., Spilman, Thomas & Battle, PLLC, Charleston, WV, W. Mack Webner, Paul M. Higgins, Kevin G. Smith, Leigh Ann Lindquist, Sughrue Mion, PLLC, Washington, D.C., for HealthNet, Inc.

Robert B. Allen, Pamela C. Deem, Allen, Guthrie, McHugh & Thomas, PLLC, Charleston, WV, Rod. S. Berman, Elizabeth Barrowman Gibson, Brian W. Kasell, Amy Lerner Hill, Jeffer, Mangels, Butler & Marmaro LLP, Los Angeles, CA, for Health Net, Inc.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the court is HealthNet, Inc.'s Motion to Disqualify Counsel [Docket 148]. For the reasons that follow, the motion is **GRANTED.**

## BACKGROUND

This case concerns the competing rights of two separate entities to use undeniably similar trademarks: HealthNet and Health Net. On August 5, 1986, long before this case was filed, George G. Guthrie wrote a letter to HealthNet, Inc. (the plaintiff) in which he discussed the legal implications of that corporation's use of "HealthNet" as a trademark. At the time, Mr. Guthrie was an attorney with the firm of Spilman, Thomas, Battle & Klostermeyer (the Spilman firm). Five years later, Mr. Guthrie left the Spilman firm and is now a partner at Allen Guthrie McHugh and Thomas, PLLC (the Allen firm).

The Spilman firm is representing the plaintiff as its local counsel in this matter. The defendant, Health Net, Inc., initially retained the law firm of Huddleston, Bolen, Beatty, Porter & Copen (the Huddleston firm) to act as its local counsel. During the time that the Huddleston firm represented the defendant, the plaintiff filed a privilege log that included references to Mr. Guthrie's August 5, 1986 letter. See HealthNet, Inc.'s Motion to Disqualify Counsel (Plaintiff's Motion) [Docket 148] at 2. In March 2003, the defendant substituted the Allen firm as its local counsel. See Agreed Order Regard-

ing Substitution of Local Counsel [Docket 106].

Before that substitution, the Allen firm performed a conflicts check and did not discover any conflict that would preclude the firm from working for the defendant. *See* Defendant Health Net, Inc.'s Response In Opposition To HealthNet, Inc.'s Motion to Disqualify Counsel (Defendant's Response) [Docket 151] at 1. In other words, the Allen firm did not recognize that a letter written by one of its partners was listed on the plaintiff's privilege log. The plaintiff did not object to the substitution, despite the fact that the Spilman firm is acting as the plaintiff's local counsel and would have known that its former member, Mr. Guthrie, is a partner at the Allen firm. Despite not objecting to the substitution, the plaintiff brought the potential conflict to the defendant's attention on August 27, 2003, almost exactly five months after the Allen firm became the defendant's local counsel. The plaintiffs filed the pending motion to disqualify the Allen firm on September 19, 2003.

The plaintiff's motion is based on the West Virginia Rules of Professional Conduct. Rule 1.9(a) of the W. Va. R. Prof'l Conduct states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Lawyers are further restricted in whom they can represent by W. Va. R. Prof'l Conduct 1.10(a), which states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." The comments to these rules highlight the conflict between a client's right to the safe-keeping of its confidences and the right of lawyers to form new associations and take on new clients after having left a previous association. The plaintiff contends that the lawyers now associated with Mr. Guthrie in the Allen firm cannot represent the defendant in this matter because of Mr. Guthrie's prior representation of the plaintiff. Although the plaintiff concedes that other courts have denied motions to disqualify in similar circumstances where the conflicted attorney was purposefully kept from having any involvement in the matter, the plaintiff asserts that the Allen firm "took no effective measures to prevent attorneys from the new firm from hearing confidences of the former client until the issue was brought to its attention in August 2003." Plaintiff's Motion at 3.

In response, the defendant argues that it cannot know whether the matter on which Mr. Guthrie worked is substantially related to this litigation, and that even if the matter is substantially related, the Allen firm should not be disqualified. *See* Defendant's Response at 3. The only lawyers at the Allen firm who have worked on this litigation are Robert B. Allen and Pamela C. Deem, neither of whom have discussed the case with Mr. Guthrie, except to inquire as to whether Mr. Guthrie had any knowledge of the potential conflict. *See id.* at 4. When asked, "Mr. Guthrie advised that he had absolutely no such knowledge and further denied any recollection about an opinion letter to Health-Net, Inc. or even having had HealthNet, Inc. as a client seventeen years ago." *Id.* To avoid any potential sharing of confidential information, the Allen firm has removed the file for this litigation from its central filing location and alerted its support staff that they should not discuss the case with Mr. Guthrie. *See id.*

The defendant argues that disqualification of counsel "is a drastic measure which courts should hesitate to impose except

when absolutely necessary." *Id.* at 5 (quoting *Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112, 116 (1991)). Disqualification in this situation is not absolutely necessary, according to the defendant, and the plaintiff's delay of six months in bringing this motion, despite its knowledge of Mr. Guthrie's letter prior to the Allen firm's involvement in the litigation, is nothing more than a harassing litigation tactic. *Id.*

## DISCUSSION

As law firms continue to merge and grow, potential conflicts between lawyers and former clients are increasingly common, and some courts have sought to temper the harsh consequences of the Rules of Professional Conduct-particularly imputed disqualification under Rule 1.10-with remedies that allow greater flexibility for law firms to represent whomever they choose. In a prior opinion, I expressed my discomfort with "the trend to dispose of centuries-old confidentiality rules solely for the convenience of modern lawyers". *Roberts & Schaefer Co. v. San–Con, Inc.,* 898 F.Supp. 356, 363 (S.D.W.Va.1995). In *Roberts & Schaefer,* attorney James R. Watson with the law firm of Steptoe & Johnson briefly represented the defendant, not knowing of his firm's ongoing representation of the plaintiff. *See id.* at 357–58. When the plaintiff contacted Steptoe & Johnson to work on the same matter, the firm discovered the conflict of interest and withdrew from any representation for either side in the matter. *See id.* at 358. The plaintiff, however, went on to hire another law firm, and that firm merged into Steptoe & Johnson shortly thereafter. *See id.* After the merger, therefore, attorneys with Steptoe & Johnson had represented opposing parties in the same matter. The defendant refused to waive the conflict created by the merger and brought a motion to disqualify Steptoe & Johnson as plaintiff's counsel under W. Va. R. Prof'l Conduct 1.9 and 1.10. *See id.* Steptoe &

Johnson argued that it had erected a "Chinese wall" around Mr. Watson and the information he acquired during his representation of the defendant. *See id.* Several of the same precautions against disclosing confidences that were taken in this case were taken in *Roberts & Schaefer,* including admonitions to the conflicted lawyer not to discuss the litigation and the sequestering of relevant files. *See id.* at 358–59. Despite those precautions, I granted the defendant's motion to disqualify counsel.

■■■ I have not changed my view of attorney conflicts of interest since the publication of *Roberts & Schaefer.* Rule 3.01 of this district's Local Rules of General Procedure still states that "[t]he [Rules] of Professional Conduct of the American Bar Association, the Model Federal Rules of Disciplinary Enforcement as adopted by this court, and the [Rules] of Professional Conduct as adopted by the Supreme Court of Appeals of West Virginia provide the basic ethical considerations and disciplinary rules for the conduct of attorneys practicing in this court." While I view motions to disqualify counsel with extreme caution because of their potential for harassment, I believe that disqualification is required when representation of a client will violate the Rules of Professional Conduct or other law. *See Roberts & Schaefer,* 898 F.Supp. at 359 (citing W. Va. R. Prof'l Conduct 1.16(a)(1)). For that reason, I continue to adhere to the rule that courts determining whether to disqualify counsel should act to prevent the appearance of impropriety and resolve doubts in favor of disqualification. *See United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir.1977). I interpret the "appearance of impropriety" standard to include an objective component: the moving party must show that a reasonable former client

would be concerned by the conflict. *See Roberts & Schaefer,* 898 F.Supp. at 359.

Considered in light of this district's ethical standards and my opinion in *Roberts & Schaefer,* the pending motion poses three questions: (1) whether Mr. Guthrie's prior representation of the plaintiff was "substantially related" to the instant litigation; (2) whether the Allen firm resolved any potential conflict by screening Mr. Guthrie from any involvement with the matter; and (3) whether the plaintiff's delay in bringing this motion constitutes a waiver. I will address each question in turn.

### 1. Mr. Guthrie's prior representation of the plaintiff was substantially related to the instant litigation.

■ The defendant has provided Mr. Guthrie's August 5, 1986 letter to the court for *in camera* inspection. The letter and three other documents from the plaintiff's privilege log have been filed under seal [Docket 157]. I agree with the plaintiff that the letter is privileged, and will therefore not reveal its contents except to say that in it, Mr. Guthrie offers legal advice concerning the plaintiff's use of the trademark "HealthNet."

The plain language of Rule 1.9 states that two matters must be "substantially related" before an attorney will be disqualified over conflicting representations. The Fourth Circuit has not defined "substantially related." The Supreme Court of Appeals of West Virginia has adopted the position of the Restatement (Third) of the Law Governing Lawyers and held that

a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former

client, unless that information has become generally known.

*State ex. rel. Keenan v. Hatcher,* 210 W.Va. 307, 557 S.E.2d 361, 368 (2001). Other district courts in this circuit have held that "[t]he 'substantially related' test requires a 'virtual congruence of issues,' and the relationship between the issues in the prior case must be 'patently clear.'" *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 514, 518 (M.D.N.C.1996) (quoting *United States Football League v. National Football League,* 605 F.Supp. 1448, 1457 (S.D.N.Y.1985)). "[T]he concern is whether there is a reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation." *Id.* (citing *In re Stokes,* 156 B.R. 181, 187 (Bankr.E.D.Va.1993)). In *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983), a case cited to the court by both parties here, Judge Posner stated simply that two representations were substantially related "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Id.* at 1266.

Under any reasonable interpretation of "substantially related matter," particularly the interpretation adopted by the West Virginia Supreme Court of Appeals, Mr. Guthrie's August 5, 1986 letter would disqualify him from representing an opponent of the plaintiff in any matter involving the validity of the plaintiff's trademark. In response to my order of October 17, 2003 [Docket 154], the plaintiffs have provided the court not only with the August 5, 1986 letter, but with other documents authored by or addressed to Mr. Guthrie as well, some of which also discuss issues relevant to disqualification. It seems entirely likely that the defendant would benefit from the use of information acquired by Mr. Guthrie in the course of representing the plaintiff, and it does not appear to the court that

the information has become generally known.

I am therefore inclined to find that the two matters are substantially related unless there is some reason to ignore the similarity between them. The defendant has argued that the situation here, where an attorney represented his former client seventeen years ago and has been at his present firm for twelve years, is "precisely the circumstance an exception to the general rule has been carved out to address." Defendant's Response at 3. The defendant has also filed an affidavit in which Mr. Guthrie swears: "I have no present knowledge of any proprietary information, confidences and/or secrets, if any, which may have been disclosed to me by HealthNet during my prior representation of it, which I am informed occurred some seventeen (17) years ago". Surreply of Defendant Health Net, Inc. (Defendant's Surreply) at Exhibit A, Affidavit of George G. Guthrie [Docket 155]. The defendant did not cite any precedent to the court, however, holding that the passage of time between legal representations is a factor to consider in deciding a motion to disqualify counsel.

The plaintiff, in contrast, has cited to the West Virginia Supreme Court of Appeals for the proposition that, "the mere passage of time does not absolve attorneys from being faithful to the mandates of the legal profession regarding the confidential treatment of information learned during the course of all attorney-client relationships ..." Plaintiff's Reply at 5 (quoting State ex. rel. Ogden Newspapers, Inc. v. Wilkes, 211 W.Va. 423, 566 S.E.2d 560, 565 (2002)). I note, however, that the Supreme Court of Appeals held, despite that disclaimer, that "the passage of time between representations is a relevant factor for a court to consider when determining under Rule 1.9 of the Rules of Professional Conduct whether a substantial relationship exists between an earlier representation of a client and subsequent employment of a lawyer adverse to the interests of a former client." Ogden Newspapers, 566 S.E.2d at 565. In fact, even the vigorous dissent to that opinion stated that "[t]he only seemingly legitimate basis upon which the majority could have concluded that [the allegedly conflicted lawyers] were not disqualified is the passage of time argument." Id. at 571. Ogden Newspapers, where the elapsed time between representations was only 9 years-significantly shorter than the 17 years here-makes a much stronger case for allowing the Allen firm to continue representing the defendant than it does for disqualification. I disagree, however, with the dissent's statement that, in light of the majority's opinion, "the passage of time alone is conclusive of whether or not an attorney is disqualified from suing a former client based upon substantially related prior legal work for such former client." Id. It seems clear that Ogden Newspapers stands for the proposition that the passage of time is only one relevant factor among others to consider in deciding a motion to disqualify counsel. Id., 566 S.E.2d at 565.

While seventeen years is certainly long enough for Mr. Guthrie to have forgotten that he ever represented the plaintiff, it is not long enough to overcome the plain language of Rule 1.9. The subject matters of Mr. Guthrie's prior representation and the current litigation are not only similar, they are in important respects identical. I **FIND** that the passage of seventeen years, while a factor weighing against disqualification, does not negate the relevance of one matter to the other. Because both matters concern the plaintiff's use of its trademark, and because information gained from the prior representation would be useful to the defendant here, I **FIND** that the two matters are substantially related.

## 2. The Allen firm's attempt to screen Mr. Guthrie from the lawyers working on this case is unavailing.

█ The parties agree that a lawyer who has moved from one private law firm to another can be "screened" from matters at the new firm on which the lawyer could not work because of Rule 1.9. *See* Plaintiff's Motion at 3; Defendant's Response at 3–4. The purpose of such screening is to create an exception to Rule 1.10(a), which states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." Law firm screens, sometimes known as "Chinese walls," are supposed to keep a conflicted lawyer from discussing the matter with firm personnel, from having access to files concerning the matter, and from sharing fees derived from the matter.

The parties have briefed the issue of whether the Allen firm sufficiently screened Mr. Guthrie from discussing this case with the lawyers working on it. As noted above, the Allen firm has removed the file for this litigation from its central filing location and alerted its support staff that they should not discuss the case with Mr. Guthrie. The plaintiff argues that the defendant "cannot show that the local firm employed any screening devices in a timely fashion because the local firm was engaged in the representation of Defendant for at least five months prior to establishing any such devices." HealthNet Inc.'s Reply to Defendant Health Net, Inc.'s Response in Opposition to HealthNet Inc.'s Motion to Disqualify Counsel (Plaintiff's Reply) [Docket 153] at 3.

I am not as confident as the parties that the screening of conflicted attorneys moving between private law firms exempts the firms from Rule 1.10. On this issue, the defendant has cited law only from the Seventh and Second Circuits, and the plaintiff only from the Seventh Circuit. I reiterate the sentiment I expressed in *Roberts & Schaefer* concerning the "trend to liberalize the rules governing imputed disqualification of law firms when a lawyer associated with that firm would be prohibited from representing the client":

> [T]he Court is troubled by the trend to dispose of centuries-old confidentiality rules solely for the convenience of modern lawyers who "move from one association to another several times in their careers." W. Va. R. Prof. Conduct 1.10 cmt. Lawyers and law firms are more than mere business entities. According to the preamble of the W. Va. R. Prof. Conduct, "[a] lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." In an age of sagging public confidence in our legal system, maintaining confidence in that system and in the legal profession is of the utmost importance. In this regard, courts should be reluctant to sacrifice the interests of clients and former clients for the perceived business interests of lawyers, especially when the state supreme court, in promulgating the Rules of Professional Conduct, has failed to adopt contrary rules. While these considerations may dampen law firm mergers, such is the price that lawyers must pay for their special status in our society.

*Roberts and Schaefer*, 898 F.Supp. 356 at 363. The American Bar Association notes in its Model Rules of Professional Conduct that although its Ethics 2000 Commission considered an amendment to Rule 1.10 to allow "screening procedures to avoid imputation of some conflicts," the amendment was not adopted: "Thus, as has been the case since 1983, the Model Rules do not recognize the use of screening procedures outside the context of former judicial officers or other third-party neutrals, or cur-

rent or former government lawyers." ABA Model Rules Prof'l Conduct R. 1.10 cmt. (2003). In the absence of controlling precedent from this circuit to the contrary, I see no reason to revise my view that, as between lawyers and their former clients, the lawyers should bear the burden of the conflicts they create.[1]

It is further apparent to me that, even if screening new lawyers could exempt a law firm from disqualification under Rule 1.10, the screening technique employed here was inadequate. Most jurisdictions that approve of the screening of private lawyers, such as the Seventh Circuit, require that the screening take place at the time of the lawyer's hiring or as soon as the disqualifying event occurs. *See, e.g., LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 258–59 (7th Cir.1983); *Smith v. Whatcott,* 757 F.2d 1098, 1101–02 (10th Cir. 1985); *see also* Lee A. Pizzimenti, *Screen Verite: Do Rules About Ethical Screens Reflect the Truth About Real–Life Law Firm Practice?* 52 U. Miami L.Rev. 305, 315–16 (1997). In *LaSalle,* the court noted that in situations approved of by courts and commentators, "the screening arrangement was set up at the time when the potentially disqualifying event occurred, either when the attorney first joined the firm or when the firm accepted a case presenting an ethical problem." *Id.* at 259. The Seventh Circuit upheld the disqualification of the conflicted attorney's law firm because the screening arrangements there were not established until the disqualification motion was filed, seven months after the conflicted attorney had joined his new law firm. *Id.* Here, as in *LaSalle,* the Allen firm did not establish its screening arrangements until at least five months after the firm undertook its representation of the defendant, which was when the conflict arose. Under such circumstances, I cannot find that the screening arrangements were timely, even judged by the standards of jurisdictions that allow screening.

I **FIND** that the Allen firm's attempt to screen Mr. Guthrie from this matter does not exempt the Allen firm from disqualification under Rule 1.10.

### 3. The plaintiff's delay in bringing this motion did not constitute a waiver of its right to do so.

■ The final factor for consideration is the plaintiff's five-month delay in bringing this motion, despite the appearance of Mr. Guthrie's letter on the plaintiff's privilege log and the fact that Mr. Guthrie is a former member of the Spilman firm, the plaintiff's local counsel. The defendant has argued that the plaintiff's delay "is nothing more than a litigation tactic designed to give the Plaintiff an advantage by requiring a new firm to be brought into this litigation at this late date." Defendant's Response at 5. In response, the plaintiff states: "It is immaterial that this objection comes after settlement negotiations between the parties collapsed, and that this case must now be litigated. If

---

1. In another case from a district court in this circuit, *Stratagene v. Invitrogen Corp.,* 225 F.Supp.2d 608 (D.Md.2002), the court considered a disqualification motion under the Maryland Rules of Professional Conduct, which state:

When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless: ... (2) the newly associated lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom."

*Id.* at 613 (quoting Md. R. Prof'l Cond. 1.10(b)). The rules that govern attorney conduct in this district make no such allowance for screening.

anything, the complicated procedural history of this case demonstrates why Plaintiff now objects to the representation." Plaintiff's Reply at 5.

The plaintiff's delay in bringing this motion is not immaterial. Other courts have found that delays in bringing disqualification motions constituted waivers. *See, e.g., Rohm & Haas Co. v. Am. Cyanamid Co.,* 187 F.Supp.2d 221, 231 (D.N.J.2001); *Zimmerman v. Duggan,* 81 B.R. 296, 301 (E.D.Pa.1987). After consideration of the facts of this case in light of those authorities, I am persuaded that the plaintiff has not waived its right to bring this motion for two reasons. First, the six-month delay does not appear to be particularly long compared to cases in which delays by the moving party were found to be waivers. In *Rohm & Haas,* for example, the delay was two and a half years. 187 F.Supp.2d at 230. *Rohm & Haas* lists a number of other delay-waiver cases, and each was based on a delay of at least fifteen months. *Id.* at 231; *see also Imbesi v. Imbesi,* No. 01–1259, 2001 WL 1352318 at *6, 2001 U.S. Dist. LEXIS 17689 at *16 (E.D.Pa. Oct. 30, 2001) (finding four month delay "insufficient to constitute a waiver of [movants'] right to assert disqualification").

The second, and more important reason for finding that the delay here did not constitute a waiver of the right to bring this motion is that the plaintiff listed Mr. Guthrie's letter on its privilege log before the Allen firm became the defendant's local counsel. In other words, the plaintiff found the letter to be relevant to the case before Mr. Guthrie's firm was even involved, which is at least some proof that this motion is not merely a tool for harassing the defendant. It is also proof that someone at the Allen firm, during its conflicts check, could have discovered the letter before the firm got involved in the case. The defendant's response that "when the file was transferred, it was volu-

minous and privilege issues were not delegated to this Firm" is not sufficient to excuse the failure to recognize the potential problem for five months. Defendant's Surreply at 2, fn. 2. While the defendant is absolutely correct that the plaintiff could have filed this motion earlier than it did, it is also true that a thorough conflicts check would have uncovered this problem. I **FIND** that the plaintiff's delay does not constitute a waiver of its right to bring this motion.

## CONCLUSION

Nothing in this opinion should be read to call Mr. Guthrie's character into question, or the character of anyone at the Allen firm. I know Mr. Guthrie and his partners to be lawyers of the highest integrity. I believe the sworn statements of Mr. Guthrie and his partner, Mr. Allen. A motion to disqualify counsel, however, is not a referendum on the trustworthiness of the counsel sought to be disqualified. It is, rather, a motion that should succeed or fail on the reasonableness of a client's perception that confidences it once shared with its lawyer are potentially available to its adversary. Where a reasonable client would be concerned by a potential conflict, a court must err on the side of disqualification.

For the reasons stated herein, the court **GRANTS** HealthNet, Inc.'s Motion to Disqualify Counsel [Docket 148].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourst.gov.