In re Fred ZIMMERMAN, Trustee in bankruptcy of American Energy Corporation, Debtor,

v.

Martin DUGGAN, et al.

Civ. A. No. 87–4792.

United States District Court, E.D. Pennsylvania.

Nov. 20, 1987.

William M. Lashner, Philadelphia, Pa., for debtor.

W. Jeffrey Garson, Philadelphia, Pa., for Bradford Mills, Martin Duggan.

Thomas P. Preston, Philadelphia, Pa., for Hydro–Co., Suds Energy Assoc., Winston Churchill.

Richard P. Abraham, Philadelphia, Pa., for Sidney Staunton.

### MEMORANDUM

NEWCOMER, District Judge.

I have before me plaintiff's motion for disqualification of certain defendants' counsel. For the reasons stated below, I will not grant the requested disqualification.

#### I. *Factual Background*

Plaintiff Fred Zimmerman is trustee in bankruptcy of American Energy Corporation (AEC). AEC is a Pennsylvania corporation engaged in the design, manufacturing and installation of trash to steam incinerator systems. Plaintiff has sued the following defendants: Hydra–Co Enterprises, (Hydra–Co), a New York corporation owning 17% of AEC stock; Bradford Mills (Mills), a New York citizen and AEC shareholder and also a partner of Bradford Associates, an investment advising group that advised a company known as Bessemer Securities to purchase 30% of AEC stock; Winston Churchill (Churchill), a Pennsylvania citizen and AEC shareholder and chairman of the AEC board of directors from November 1983 to July 1985, and also a partner of Bradford Associates; Sidney Staunton (Staunton), a Connecticut citizen, August 1983 to November, 1983 chairman of AEC's board of directors, board member until December 1984, and paid financial consultant for AEC; Martin Duggan (Duggan), a New York citizen who was president and director of AEC and also president of co-defendant Hydra–Co.; Suds Energy Associates (Suds), a New York limited partnership with Hydra–Co. as general partner holding a 14% ownership interest and Churchill and Mills as limited partners each owning a 38% interest.

Plaintiff's complaint in this action consists of at least fourteen counts alleging fraud, breach of corporate fiduciary duties by former officers, directors and shareholders of AEC, racketeering, usurpation of corporate opportunities and other related causes of action. The crux of plaintiff's claims seems to be that the defendants gained control of AEC in November 1983 and used the corporation for a personal benefit[1] at the expense of minority shareholders and creditors thus finally causing AEC to fall victim to an involuntary bankruptcy petition in August 1985.

After defendants Churchill and Mills' attorneys, W. Jeffrey Garson and Pamela Babett Levinson of Saul, Ewing, Remick & Saul (Saul, Ewing) entered an appearance for Churchill and Mills, plaintiff filed this

---

1. Plaintiff claims that the defendants unlawfully reaped the benefits from a contract between AEC and C. Schmidt and Sons brewery in Philadelphia whereby AEC was to install a trash to steam incinerator at the brewery in return for compensation from Schmidt's energy savings. AEC contracted with Hydra–Co to finance the construction of the incinerator. Hydra–Co ultimately sold its interest in the Schmidt contract to Suds. Through these transactions, plaintiff claims that the defendants acted improperly out of self interest to the detriment of AEC.

motion for disqualification of the firm of Saul, Ewing in the present litigation due to an alleged conflict of interest arising from Saul Ewing's representation of AEC during the time period relevant to this lawsuit.

## II. *Representation History*

Plaintiff's motion simply states that from February 1984[2] until after the involuntary bankruptcy petition was filed in August, 1985, Saul, Ewing represented plaintiff AEC in its legal affairs. Plaintiff neglected to mention that Saul, Ewing has continuously represented Bradford Associates, a financial consulting firm, Bessemer Securities, its principal client, and Bradford's partners including defendant Bradford Mills since 1974. In addition, Saul, Ewing began representing defendant Winston Churchill after he left his law practice of sixteen years with Saul, Ewing to join Bradford Associates on January 1, 1984.

A relationship existed between Mills, Bradford Mills Associates, Bessemer Securities and Saul, Ewing of which AEC was or should have been aware as early as November, 1983 when Churchill, acting as Saul, Ewing's senior partner, represented Mills, Bradford Mills Associates and Bessmer Securities in the purchase of 51% of AEC's stock. Shortly after this stock purchase, Saul, Ewing began to perform legal services for AEC.[3]

Saul, Ewing then continued to represent Mills, Churchill, Bradford Associates, Bessemer Securities and also AEC. In August 1985, an involuntary bankruptcy petition was filed against AEC. Saul, Ewing was appointed counsel for the debtor after a hearing at which plaintiff in this action strongly supported Saul, Ewing's appointment. Saul, Ewing withdrew as debtor's counsel five months later as an emerging conflict arose when plaintiff informed Saul, Ewing that it was considering filing a claim against Bradford Associates and other individuals. Saul, Ewing's motion to withdraw as counsel for AEC was granted without opposition by the plaintiff.

Ever since Saul, Ewing withdrew as AEC's counsel in bankruptcy, plaintiff's present counsel has consistently dealt with Saul, Ewing in its capacity as counsel for defendants Mills and Churchill. Beginning in February 1986, plaintiff's counsel and Saul, Ewing worked together voluntarily and pursuant to bankruptcy rules to organize and complete document productions and depositions.[4] Considering the magnitude of this action, the pre-complaint discovery activity was quite substantial and demanding upon both plaintiff's counsel and Saul, Ewing.

Plaintiff and Saul, Ewing, as attorney for Mills and Churchill, had further interaction in five related lawsuits filed in the bankruptcy court on April 28, 1987.[5] These five bankruptcy cases were fully litigated with Saul, Ewing representing defendants Mills and Churchill and also Bradford Associates and Bessemer Securities who are not defendants in this action. A two day trial took place before the Honorable Bruce I. Fox in June 1987. Throughout this litigation activity, plaintiff did not raise the disqualification issue.

Plaintiff filed this action on July 31, 1987 and he filed this motion to disqualify Saul, Ewing on September 18, 1987.

## III. *Discussion*

Plaintiff claims that this Court should disqualify Saul, Ewing because continued representation of defendants Mills and Churchill would violate Rule 1.9 of the

---

**2.** Plaintiff's disqualification motion states that representation began in February 1985. The Court believes this is an error and will assume the plaintiff meant February, 1984. Plaintiff's Motion, p. 2, ¶ 4. *See Id.* ¶ 5.

**3.** Defendant alleges that Saul, Ewing's representation of AEC was done as an accomodation to its former clients, Mills, Bradford Mills Associates, Bessemer Securities and Winston Churchill, at its former clients' request. This scenario casts an interesting light on plaintiff's basic assumption that AEC was Saul, Ewing's "former" client.

**4.** Bankruptcy Rule 2004, 11 U.S.C. Rule 2004, provides a trustee with the ability to take discovery *before* filing a complaint.

**5.** Adversary proceeding numbers; 87–0385, 87–0389, 87–0384, 87–0386, 87–0387.

ABA Model Rules of Professional Conduct.[6] The ABA Code does not expressly prohibit representation of interests adverse to former clients. The Third Circuit has imposed such a duty under Canon 9's "appearance of impropriety" provision. *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 161 (3rd Cir.1984) *cert. den.* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) (citing *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385–86 (3rd Cir.1972), *cert. den.*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)). Rule 1.9 of the Model Rules creates a duty to protect the interests of former clients in its explicit language,

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

ABA Model Rule of Professional Conduct, Rule 1.9.

Rule 1.9 serves many purposes. It prevents the possibility that a client's secrets will be used against him. The rule also maintains public confidence in the integrity of the bar. Finally, the rule fulfills the former clients' expectations that lawyers will be loyal to their clients. *In Re Corn Derivatives*, 748 F.2d at 162.

To establish a violation of Rule 1.9, plaintiff must demonstrate that AEC was Saul, Ewing's former client and that Saul, Ewing's representation of Mills and Churchill concerns the same or a substantially related matter in which Mills and Churchill's interest is materially adverse to AEC. Finally, AEC must not have consented to the representation.

It is clear that AEC's interests are materially adverse to Mills and Churchill since AEC's trustee in bankruptcy has sued these parties in this action. That is the only clear element in this case. Perhaps

less problematic than the other areas is the conclusion that Saul, Ewing represented AEC, Mills and Churchill in the same or substantially related matters. Saul, Ewing represented AEC on various matters involving AEC's corporate status. For example, Saul, Ewing handled employee relations issues, insurance and collection matters, preparation of board minutes, and the preparation of routine business documents. During its long relationship as legal counsel, Saul, Ewing represented Mills and Churchill on various matters including the purchase of AEC stock and now the defense of this suit brought by the corporation. This is a situation where Saul, Ewing might have gained information in its representation of AEC that it may utilize in its representation of Mills and Churchill. Under a typical former client fact situation, this exposure to confidences could lead to Saul, Ewing's disqualification. See *American Roller Company v. Budinger*, 513 F.2d 982, 984–5 (3d Cir.1975) and *Kaminski Brothers, Inc. v. Detroit Diesel Allison*, 638 F.Supp. 414, 417 (M.D.Pa.1985). This case, however, does not involve a typical former client fact scenario.

The overlap in representation in this case was only natural under the circumstances. Mills was Saul, Ewing's long-standing client and shareholder of AEC; Churchill was a former Saul, Ewing senior attorney and Chairman of AEC's board of directors; and finally AEC was a corporate client represented only at Mills and Churchill's request. Consequently satisfaction of the adverse interest and substantial relation tests are not adequate for disqualification under these unique facts.

I cannot agree with plaintiff's assertion that AEC is Saul, Ewing's "former client" under the facts presented to the Court. Clearly Mills and Churchill more accurately fit that description. I believe that AEC utilized Saul, Ewing as counsel knowing full well that the law firm had a prior

---

**6.** The Third Circuit Court of Appeals has stated clearly that both the Model Code of Professional Responsibility (Code) and the Model Rules of Professional Conduct (Rules) govern attorneys who appear before courts in this Circuit and that they give the current national standards of ethical norms. *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160–61 (3rd Cir.1984) *cert. den.* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

relationship with Mills and Churchill and that the firm owed Mills and Churchill a primary duty of loyalty. *See Alleqaert v. Perot*, 565 F.2d 246 (2d Cir.1977) (continuous and unbroken legal relationship with primary clients precluded disqualification); *C.A.M. v. E.B. Marks Music, Inc.*, 558 F.Supp. 57 (S.D.N.Y.1983) (Motion to disqualify denied because secondary client could not expect concealment of confidences from primary client) *Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876 (E.D.Pa. 1976) (primary and secondary client relationships existed and disqualification denied). The fact that AEC utilized Saul, Ewing as legal counsel under these circumstances undermines its argument that it expected that its secrets and confidences would be kept confidential from Mills (a AEC shareholder and primary client) and Churchill (prior attorney of Saul, Ewing, AEC shareholder and chairman of the board of directors. *See Neiman v. Local 144*, 512 F.Supp. 187 (E.D.N.Y.1981) (primary client as member of secondary client's board of directors). This case certainly does not involve the typical former client scenario, and the relationships here must be acknowledged and examined before an application of the former client rule is employed.

Defendants Mills and Churchill contend that plaintiff is precluded from raising the question of disqualification regarding Saul, Ewing's representation because plaintiff waived its opportunity to object. I agree with the defendants on this point. An examination of the law and the relevant facts concerning waiver and consent is in order.

■ Waiver is a valid basis for denial of a motion to disqualify. *I.N.A. Underwriters Ins. v. Nalibotsky*, 594 F.Supp. 1199, 1204 (E.D.Pa.1984). A waiver may be found by express assent to the representation or by conduct that implies assent. The district court in *INA* stated,

> When a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had an opportunity ... the person whose confidences and secrets are potentially at risk

of disclosure or misuse is held to have waived his right to protection from the risk.

*Id.* at 1204. The Ninth Circuit Court of Appeals, in *Trust Corporation of Montana v. Piper Aircraft Corporation*, 701 F.2d 85 (9th Cir.1983), held that a former client may impliedly waive his objection and consent to adverse representation by knowingly refraining from asserting a conflict of interest for an extended period of time. *Id.* at 87. The court found that the former client failed to object within a reasonable time which constituted a *defacto* consent to the subsequent representation and a waiver of the right to object. *Id.* at 88.

■ In the present case, the facts suggest that plaintiff's delay in raising the disqualification issue constitutes consent to Saul, Ewing's representation of Mills and Churchill as well as a waiver of the right to object. Plaintiff consistently failed to raise the disqualification issue although the potential conflict of interest was apparent for quite sometime. As early as August 1985, plaintiff's counsel discussed the possibility of filing the instant lawsuit. In October 1985, a prior AEC shareholder suggested that plaintiff's counsel should object to Saul, Ewing's continuation as counsel for AEC at a bankruptcy hearing. Nevertheless, on November 6, 1985 plaintiff's counsel supported Saul, Ewing's application to represent AEC in bankruptcy after informing the Bankruptcy Court that it had considered both potential and actual conflicts of interests. On February 24, 1986, plaintiff's counsel prepared the first draft of the complaint in this case and still they did not raise the disqualification issue.

Saul, Ewing's motion to withdraw as AEC's counsel was filed on March 4, 1986 due to an emerging conflict between AEC and the defendants in this case. Plaintiff's counsel did not oppose the motion and, most importantly, did not question the propriety of Saul, Ewing's continued representation of Mills and Churchill. In sharp contrast, plaintiff's counsel worked with Saul, Ewing as Mills and Churchill's counsel in its extensive discovery requests. Fi-

nally, plaintiff did not object to Saul, Ewing's representation of Mills and Churchill in the five related bankruptcy suits filed on April 28, 1987. The time sheets of plaintiff's counsel submitted to the Bankruptcy Court in support of its fee application reflect a conscious decision not to seek disqualification on April 30, 1987, just two days after the bankruptcy lawsuits were filed.

Plaintiff filed this action on July 31, 1987. Nearly three years after the conflict issue was first raised in the Bankruptcy Court, plaintiff filed this disqualification motion on September 18, 1987. These facts clearly indicate a conscious delay on plaintiff's behalf which resulted in consent to Saul, Ewing's representation of Mills and Churchill and a waiver of the opportunity to object to Saul, Ewing's participation in this case.

When the parties interests are balanced[7] in this case, the harm to Mills and Churchill far outweighs any potential prejudice to AEC. Mills and Churchill have a strong interest in retaining the counsel utilized by Mills for the last 13 years and Churchill for the last 3¾ years. Prejudice to AEC seems unlikely because it understood the duties and loyalties that Saul, Ewing owed to the defendants when it accepted its legal representation.

Although I do not have the factual basis to find that this motion was brought in bad faith, plaintiff's motion and supporting memoranda were disgracefully lacking in most of the facts relevant to this decision. I feel I must emphasize at this point that I take motions for disqualification very seriously and they should not be filed lightly for tactical purposes.[8]

I therefore will deny plaintiff's motion for disqualification. An appropriate order follows.

---

**7.** See *In Re Corn Derivatives*, 748 F.2d 157, 162 (3rd Cir.1984) for authority to employ a balancing test in this situation.

**8.** See *Hamilton v. Merrill Lynch*, 645 F.Supp. 60 (E.D.Pa.1986) and *Nemours Foundation v. Gil-*

*bane, Aetna, Federal Insurance Company*, 632 F.Supp. 418 (Del.1986) for prohibitions on the use of disqualification motions for tactical reasons.