**ROHM AND HAAS COMPANY,**
Plaintiff,

v.

**AMERICAN CYANAMID COMPANY,** Ashland, Inc., GAF Corporation, General Electric Company and Monsanto Company, Defendants.

**Civil Action Nos. 95–1865(DMC), 99–1891(DMC).**

United States District Court,
D. New Jersey.

Nov. 20, 2001.

---

Steven L. Lapidus, Robinson, Lapidus & Livelli, Newark, NJ, Robert N. Feltoon, Conrad O'Brien Gellman & Rohn, PC, Mount Laurel, NJ, for Plaintiff.

James L. McKenna, McKenna, Walker & Capriotti, PC, Cherry Hill, NJ, Theodore Ellis Baker, Lummis, Fisher, Kress & Baker, Bridgeton, NJ, Russell Lyle Hewitt, Dughi and Hewitt, Cranford, NJ, Vincent J. Rizzo, Jr., Fitzgerald & Baker, Rutherford, NJ, Daniel Kinburn, Dwyer, Kinburn & Hall, PC, Totowa, NJ, Anthony Bartell, McCarter & English, LLP, Newark, NJ, Philip R. Sellinger, Stills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ, John M. Armstrong, Schnader, Harrison, Segal & Lewis, LLP, Cherry Hill, NJ, for Defendants.

## OPINION

CAVANAUGH, District Judge.

This matter comes before the Court on motion, filed as an Order to Show Cause, by Defendant, American Cyanamid Company ("American Cyanamid"), to disqualify counsel for Plaintiff, Rohm and Haas Company ("Rohm and Haas"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, oral argument was heard on November 5, 2001. After carefully reviewing the record and for the reasons set forth below, Defendant's motion to disqualify Plaintiff's counsel is **denied**.

## BACKGROUND

This case involves many individuals and entities, therefore, the following *dramatis personae* should prove helpful in understanding the Court's analysis.

**Rohm and Haas**—Plaintiff in both consolidated actions and one of the parties held jointly and severally liable for contaminating the Picillo site in other cases.

**Ellen Friedell**—In-house counsel for Rohm and Haas.

**Schnader, Harrison, Segal & Lewis, LLP**—The law firm representing Rohm and Haas in both consolidated actions since on or about April 11, 1995.

**John Armstrong**—Attorney from the firm of Schnader, Harrison, Segal & Lewis, LLP representing the Rohm and Haas Company.

**Dennis Suplee**—Attorney from the firm of Schnader, Harrison, Segal & Lewis, LLP representing the Rohm and Haas Company.

**American Cyanamid**—Defendant in the 99–1891 action and co-plaintiff with Rohm and Haas in the 95–1865 action.

**Margaret Tribble**—In-house counsel for the American Cyanamid Company.

**Sills Cummis Radin Tischman Epstein & Gross**—Counsel representing American Cyanamid Company in this present matter, primarily through attorney Mark S. Olinsky.

**Deming Sherman of Edwards & Angell**—Represented American Cyanamid Company between approximately 1980 and 1995.

**Ashland Inc.**—A primarily responsible party participating in the cleanup of the Picillo site.

**GAF Corp.**—A primarily responsible party participating in the cleanup of the Picillo site.

General Electric Company—A primarily responsible party participating in the cleanup of the Picillo site.

Monsanto Company—A primarily responsible party participating in the cleanup of the Picillo site.

The Performing Group—American Cyanamid Company, along with Ashland Inc., GAF Corp., General Electric Company, Monsanto Company refer to themselves collectively as the Performing Group because they have entered negotiations with the United States resolve their liability for contaminating the site by agreeing to "perform" part of the decontamination procedures on the Picillo site. It is Rohm and Haas Company's disagreements with the Performing Group that has prompted the present litigation (especially in 99–1891).

### The Picillo Pig Farm Litigation and Efforts Toward Negotiation

At some point in the mid–1970's, the Picillo pig farm in Rhode Island was used by dozens of companies for the illegal dumping of hazardous waste. *See* Rohm and Haas' Brief in Opposition to the Motion to Disqualify the Law Firm of Schnader Harrison Segal & Lewis, LLP ("Opposition Brief") at 7. This dumping became public on or about September 30, 1977, when the site caught fire. *See* Opposition Brief at 7. A series of legal disputes have arisen since then. In 1988 and 1990, Rohm and Haas and American Cyanamid, the present litigants and two of many companies partially responsible for the contamination, were held jointly and severally liable for past and future response costs for contaminating the Picillo site. *See* Brief in Support of the Performing Group's Motion to Disqualify the Law Firm of Schnader Harrison Segal & Lewis, LLP ("Supporting Brief") at 3. In each

action, Deming Sherman, Esq. represented both parties. *See* Certification of Margaret Tribble ("Tribble Cert."), ¶ 2; Supporting Brief at 3.

After the 1990 case, American Cyanamid joined with four other primarily responsible parties, Ashland Inc., GAF Corp., General Electric Company and the Monsanto Company (collectively referred to as the Performing Group) and Rohm and Haas to attempt to account for future response costs at the Picillo site. *See* Tribble Cert., ¶ 4; Supporting Brief at 3. These negotiations allegedly led to a rough allocation of financial responsibility (by percentage), contingent, in part, on the contribution of some outside groups. *See* Tribble Cert., ¶ 5, 12; Supporting Brief at 3–4. These outside groups eventually decided not to participate in negotiations with the Performing Group and the United States with regard to the Picillo Site. As a result, all six responsible parties were called upon to assume a greater percentage of responsibility in their proposed consent decree with the United States. *See* Tribble Cert., ¶ 5; Supporting Brief at 4. American Cyanamid asserts that Rohm and Haas objected to this potential increase in financial responsibility and opted out of the negotiations in March 1995. *See* Tribble Cert., ¶ 14; Supporting Brief at 4.

Rohm and Haas opted out of the negotiations toward developing a consent decree because it disagreed with the method of allocation used by the Performing Group. The Performing Group advocates a drums-on-site approach. Under this approach, liability is determined by calculating the percentage of identifiable drums attributable to each of the primarily responsible parties (Rohm and Haas and the five members of the Performing Group). Rohm and Haas asserts that this method is improper because a mere 700 out of an estimated 20,000 drums of waste were identi-

fied at the Picillo site. In contrast, Rohm and Haas advocates a "transhipment" theory that seeks to assess the percentage of responsibility through a more roundabout analysis. First Rohm and Haas would obtain discovery on the total amount of waste sent out by American Cyanamid to various waste haulers or "transhippers," then Rohm and Haas would subtract the amount of waste that was dumped in sites other than the Picillo site by these transhippers. The remaining waste, under a transhipment theory, constitutes an approximation of the amount of waste dumped by American Cyanamid at the Picillo site.[1]

### The Conflict of Interest

In March 1995, American Cyanamid and Rohm and Haas were held jointly and severally liable for contaminating at the Picillo site. Subsequently, in-house counsel for both companies began exploring the option of utilizing joint counsel to file contribution actions in order to recover expenditures incurred in litigation. See Tribble Cert, ¶ 7; Supporting Brief at 4–5. These discussions appear, at least in part, to have been motivated by an impending statute of limitations, set to run on April 20, 1995. See Suplee Cert, ¶ 3; Armstrong Cert., ¶ 9; Friedell Cert., ¶ 29. Rohm and Haas hired the law firm of Schnader, Harrison, Segal & Lewis, LLP ("the Schnader firm") on April 11, 1995 and American Cyanamid did the same on April 19, 1995, one day before the running of the applicable limitations statute. See Tribble Cert., ¶ 7; Tribble Reply Cert., ¶ 2. On April 20, 1995, the

Schnader firm filed contribution suits in the Districts of Rhode Island and New Jersey on behalf of Rohm and Haas and American Cyanamid.

The Schnader firm was provided with extensive files by Deming Sherman, former counsel to Rohm and Haas and American Cyanamid. See Supporting Brief at 5–6. At the time the Schnader firm began the representation in 1995, Dennis Suplee, a Schnader attorney, conducted a routine conflict check and found no conflict. A few months later in May 1995, American Cyanamid notified the Schnader firm that a potential conflict was perceived and separate counsel would be retained to represent American Cyanamid. See Armstrong Cert., ¶¶ 22–24; Supporting Brief at 2; Certification of Dennis R. Suplee ("Suplee Cert."), ¶¶ 16–17; Certification of Ellen Friedell ("Friedell Cert."), 39, 41. Separate counsel was not actually retained until about September 1995. See Armstrong Cert., ¶ 28–29; Tribble Cert., ¶ 14.

All the while, the Performing Group continued negotiating with the United States toward a consent decree (which Rohm and Haas opted out of, prompting American Cyanamid to refer to Rohm and Haas as "recalcitrant"). To entice settlement, the Performing Group offered to name settling parties on the consent decree, thus insulating any settling parties from future contribution liability under CERCLA. See Supporting Brief at 7. American Cyanamid reached settlement with approximately thirty-six contributing parties. See Certification of John Armstrong ("Armstrong

---

**1.** This calculation is complicated by the fact that apparently none of the companies directly dumped waste at the Picillo site. Each contaminator used a waste hauler or transhipper, who in turn decided to eventually transport the collected waste to the Picillo site. The calculation is further complicated by the fact that each waste hauler received waste from numerous sources, thus making accurate assessments of whose waste was dumped at a particular site very difficult. At this time, the Court makes no ruling as to the propriety of a transhipment method of allocating responsibility versus any other method, but merely presents the issues here to provide sufficient background to assess the present motion.

Cert."), ¶ 36. In light of notes by American Cyanamid's in-house counsel stating that Rohm and Haas should be "thrown to the wolves," Rohm and Haas refers to the settlement negotiations as a smear campaign meant to eliminate Rohm and Haas' potential sources of contribution. *See* Reply Certification of Margaret Tribble ("Tribble Reply Cert."), ¶ 13.

#### The Alleged Discovery of the Conflict

American Cyanamid maintains that the conflict at issue in this case was apparently discovered on August 16, 2001 during preparation for a deposition of Margaret Tribble, in-house counsel for American Cyanamid. Ms. Tribble was informed that the attorney who would be deposing her was Dennis Suplee of the Schnader firm. *See* Supporting Brief at 10. American Cyanamid contends that the mention of Mr. Suplee's name triggered sudden recognition in Ms. Tribble [2] that Mr. Suplee was a member of the Schnader firm that formerly represented American Cyanamid in 1995. *See* Tr. at 6:7–20. Counsel for American Cyanamid promptly brought this motion after that incident.

#### The Potential Prejudice to the Schnader Firm

Since April 1995, the Schnader firm has collected over one hundred boxes of documents, conducted approximately thirty-nine depositions, and has been paid attorney's fees in excess of 1.2 million dollars in these consolidated matters. *See* Tr. at 7:6–11. Schnader has also amassed a considerable level of expertise over the factual and legal matters in this case. *See* Armstrong Cert., ¶¶ 42–52.

#### The Arguments

American Cyanamid contends that the Schnader firm violated the New Jersey Rules of Professional Conduct by repre-senting Rohm and Haas in the present action (Civil Action No. 99–1891) against American Cyanamid while having previously represented American Cyanamid in a contribution claim (Civil Action No. 95–1865) also pending before this Court in this consolidated action. *See* Supporting Brief at 1. As mentioned, American Cyanamid states that this "reversal of loyalties" was only discovered fortuitously on August 16, 2001 at the preparation for a deposition. *See* Supporting Brief at 2. American Cyanamid claims that Rohm and Haas should be disqualified for this unethical conduct.

## DISCUSSION

### I. Standard of Review of Motions to Disqualify.

■ It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only "when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*citing Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983)). *See also Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208 (E.D.Pa. 1992); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991); *Donohoe v. Consolidated Operating & Production Corp.*, 691 F.Supp. 109, 118 (N.D.Ill.1988); *Hamilton v. Merrill Lynch*, 645 F.Supp. 60, 61 (E.D.Pa.1986); *United States use of Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F.Supp. 1556, 1563 (W.D.Wash.1986); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985).

■ A party seeking disqualification must meet a "heavy burden" of proof be-

---

**2.** Regarding potential conflicts, Ms. Tribble states that it was her practice to defer to the advice of counsel, rather than assess conflicts herself. *See* Tribble Cert., ¶ 23.

fore a court will disqualify an attorney or law firm. *See Alexander*, 822 F.Supp. at 1114; *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *Bennett Silvershein*, 776 F.Supp. at 802. In light of this high standard, New Jersey courts engage in a "painstaking analysis of the facts" when addressing motions for disqualification. *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 205, 536 A.2d 243 (1988) (*citing Reardon v. Marlayne*, Inc., 83 N.J. 460, 469, 416 A.2d 852 (1980)). Throughout this analysis, this Court recognizes that although a party has no right to specific counsel, *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir.1978), the selection of counsel by a party is "entitled to substantial deference." *Alexander*, 822 F.Supp. at 1114 (*citing Commonwealth Ins.*, 808 F.Supp. at 1208); *Hamilton*, 645 F.Supp. at 61; *Nemours Found. v. Gilbane, Aetna, Federal Ins. Co.*, 632 F.Supp. 418, 431 (D.Del.1986); *see also United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980) (stating that permitting litigants to retain counsel of choice is an important countervailing policy to disqualification).

As observed by Magistrate Judge Stanley R. Chesler in *Carlyle Towers Condominium Ass. v. Crossland Savings, FSB*, 944 F.Supp. 341 (D.N.J.1996):

> When pondering the proper outcome for a specific case, courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just

as likely—encouragement of vexatious tactics, which increase public cynicism about the administration of justice.

*Id.* at 345 (*citing Gould Inc. v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121, 1126 (N.D.Ohio 1990)) (internal quotation marks omitted).

American Cyanamid seeks to have the Schnader firm disqualified as counsel because of an alleged former client conflict under New Jersey Rule of Professional Conduct 1.9 and in light of a potential appearance of impropriety as described by New Jersey Rule of Professional Conduct 1.7. The Court will discuss these claims in turn.

## II. *Former Client Conflict RPC 1.9*

■ New Jersey Rule of Professional Conduct ("RPC") 1.9 governs the conduct of all attorneys practicing in the State of New Jersey with regard to former client conflicts. *See United States v. Walsh*, 699 F.Supp. 469, 472 (D.N.J.1988). RPC 1.9 states that:

> (a) A lawyer who has represented a client in a matter shall not thereafter:
>
> (1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client.

RPC 1.9(a).[3] RPC 1.9 was enacted to promote attorney loyalty, client confidence

---

**3.** Prior to the enactment of the present RPC 1.9, The New Jersey Supreme Court utilized a three-part test for assessing the a former client conflict. Under this test, disqualification was virtually mandatory if the following three elements were met:

(1) a prior attorney-client relationship between the former client and the attorney sought to be disqualified;

(2) a substantial relationship or a reasonable perception, from the public's perspective, of a substantial relationship between the subject matter of the present suit and that of cases worked on during the former representation;

(3) access to relevant confidences of the former client, which may be proven by other than direct evidence, leading to a conclu-

and public respect for the integrity of the bar. *See In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 162 (3d Cir.1984); *Kaselaan & D'Angelo Assocs. Inc. v. D'Angelo,* 144 F.R.D. 235, 239 (D.N.J. 1992).

Applying RPC 1.9 requires an assessment of whether American Cyanamid is a former client of the Schnader firm, whether the current representation of Rohm and Haas is in the same or a substantially related matter, whether the representation is materially adverse to American Cyanamid, and if so, whether consent was given to proceed with the litigation after full disclosure. *See* RPC 1.9.

On the present facts, Schnader represented American Cyanamid from April 1995 until September 1995 as a co-plaintiff in two contribution suits, one in particular before this court in this consolidated action (No. 95–1895) and another in the District of Rhode Island. Thus, American Cyanamid was indeed a former client of the Schnader firm.

■■ With regard to the substantially related prong of the analysis, matters are considered substantially related when "it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his [or her] subsequent representation." *Ciba–Geigy Corp. v. Alza Corp.,* 795 F.Supp. 711, 716 (D.N.J. 1992). The court in *Ciba–Geigy Corp.* further explained that "the test focuses on the similarity of the factual bases of the two representations, rather than on the similarity of the underlying causes of action." *Id.* Here, the two matters at issue are so substantially related that this Court saw

fit to consolidate the matters. In short, the matters are not merely similar, they are virtually identical. Only different questions of law differentiate these two cases in this consolidated action.

■■ ■■ Turning to the adversity requirement, a conflict arises when substantially related matters place an attorney in a position that is materially adverse to a former client. Here, the Schnader firm is representing its current client, Rohm and Haas, against a former client, American Cyanamid. On these facts, it is evident that Rohm and Haas and American Cyanamid are materially adverse to each other for the purposes of this motion. The record indicates that a former client conflict arose sometime between American Cyanamid's decision to retain separate counsel in May, 1995 and the filing of the 99–1891 action on April 26, 1999. Two ways to eliminate a RPC 1.9 former client conflict of interest are consent after full disclosure of the conflict and waiver resulting from an undue delay in moving to disqualify. This Court finds that proper RPC 1.9 consent was not obtained from American Cyanamid by the Schnader firm. Before discussing waiver, this Court will briefly address the appearance of impropriety doctrine of RPC 1.7.

### III. *Appearance of Impropriety RPC 1.7*

Even where no actual conflict exists, an attorney can be disqualified from a case if the "appearance of impropriety" is sufficiently great. *See* Rule. RPC 1.7, 1.9(b). Disqualification under this doctrine is proper where "an ordinary knowledgeable citizen acquainted with the facts" could conclude that the Schnader firm's repre-

---

sive presumption of the attorney's knowledge of such confidences.
*Reardon v. Marlayne,* 83 N.J. 460, 474, 416 A.2d 852 (1980). However, in light of the enactment of New Jersey's Rules of Profes-

sional Conduct in 1984, the New Jersey Supreme Court in *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 208, 536 A.2d 243 (1988) announced this rule to no longer apply.

sentation of Rohm and Haas in the present litigation poses a "substantial risk of disservice either to the public interest or the interest of one of the clients." RPC 1.7(c)(2). This rule is intended to instill public confidence in the legal profession. *See In re Opinion No. 415*, 81 N.J. 318, 323–24, 407 A.2d 1197 (1979). RPC 1.7 does not focus on fanciful possibilities, but rather on reasonable fears of attorney misconduct. *See Dewey*, 109 N.J. at 216, 536 A.2d 243; *Ciba–Geigy Corp. v. Alza Corp.*, 795 F.Supp. 711, 719 (D.N.J.1992).

In light of the fact that an actual conflict appears to exist in this matter, neither a lengthy discussion, nor a conclusive finding regarding the appearance of impropriety is warranted. In short, the Court finds the Schnader firm's brief representation of American Cyanamid in 1995 and the present representation of Rohm and Haas created an actual conflict of interest under the principles of RPC 1.9 and opts to not discuss how the appearance of impropriety applies to the present motion. Normally, this finding would warrant disqualification of the Schnader firm. However, the facts on record present an additional legal question; whether American Cyanamid waived the right to bring a motion to disqualify the Schnader firm. *See* Tr. at 12:14–22.

## IV. *Waiver*

 Where a conflict of interest exists, disqualification is not required. *See Dewey*, 109 N.J. at 215, 536 A.2d 243; *Alexander*, 822 F.Supp. at 1115. A "valid basis for the denial of a motion to disqualify" is waiver. *Id.* (*citing Commonwealth Ins.*, 808 F.Supp. at 1208) and *see Zimmerman v. Duggan*, 81 B.R. 296, 300 (E.D.Pa.1987); *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1204 (E.D.Pa.1984); *Jackson v. J.C. Penney Co.*, 521 F.Supp. 1032, 1034–35 (N.D.Ga.

1981). As described by the court in *Alexander:*

> [A] finding [of waiver] is justified ... when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In [this] circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.

*Alexander*, 822 F.Supp. at 1115 (*citing Commonwealth Ins.*, 808 F.Supp. at 1208). This approach has been utilized by numerous courts. *See, e.g., Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983) (*citing* additional cases); *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir.1978); *Zimmerman*, 81 B.R. at 300; *INA Underwriters*, 594 F.Supp. at 1204 (citing additional cases); *Jackson*, 521 F.Supp. at 1034–35; *Redd v. Shell Oil Co.*, 518 F.2d 311, 314–15 (10th Cir.1975); *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F.Supp. 852, 858–59 (N.D.Ohio 1984); *Glover v. Libman*, 578 F.Supp. 748, 767 (N.D.Ga.1983); *United States v. Newman*, 534 F.Supp. 1113, 1127 (S.D.N.Y.1982).

 The assessment of whether a party moving for disqualification has waived its right to make such a request requires an analysis of five factors:

(1) the length of the delay in bringing the motion to disqualify

(2) when the movant learned of the conflict

(3) whether the movant was represented by counsel during the delay

(4) why the delay occurred

(5) whether disqualification would result in prejudice to the non-moving party

*Alexander*, 822 F.Supp. at 1115 (citing cases). The essence of this analysis is

whether the party seeking disqualification appears to use the disqualification motion as a tactical maneuver. *See Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (expressing a concern for the "tactical use of disqualification motions to harass opposing counsel"); *Alexander*, 822 F.Supp. at 1116, 1119 (finding that a motion for disqualification brought three years after the commencement of litigation where the facts regarding the conflict were known was suspect).

▬ Applying the five-part test for waiver in this case, the facts favor denial of American Cyanamid's motion to disqualify the Schnader firm. First, this motion was filed approximately two and a half years after the case was commenced. American Cyanamid argues that they recognized the conflict only after in-house counsel heard Dennis Suplee's name and recognized his position with the Schnader firm. *See* Tr. at 14:4–8. This argument does not appear credible. Mr. Suplee's name has appeared on papers and letters to the Court and was certainly mentioned in correspondence between the Rohm and Haas and American Cyanamid. *See* Tr. at 16:13–22. In fact, the record reflects that it was American Cyanamid's in-house counsel herself who arranged for the Schnader firm to represent American Cyanamid in two 1995 contribution actions. *See* Tribble Cert, ¶ 7; Tribble Reply Cert., ¶ 2; Suplee Cert., ¶ 6; Armstrong Cert., ¶ 14; Friedell Cert., ¶¶ 30–31. In addition, it was American Cyanamid's in-house counsel herself who communicated to the Schnader firm that they were to be replaced by new counsel. *See* Tribble Reply Cert., ¶ 3 (stating "At some point, I know that I notified the Schnader firm of American Cyanamid's intention to engage separate counsel in the 1995 contribution action to handle the settlements that American Cyanamid was trying to make with the

defendants in that action; however, the Schnader firm continued to represent American Cyanamid in the 1995 contribution action until the transition to American Cyanamid's new counsel was made in or around August 31, 1995."). This Court has difficulty believing that American Cyanamid was unaware of the fact that Rohm and Haas, by way of attorneys previously retained *by* American Cyanamid, had instituted suit *against* American Cyanamid. As a result, this factor favors waiver.

The second factor ties into the first. This Court does not give much weight to American Cyanamid's argument that this conflict was discovered on August 16, 2001. Rather, this Court observes that this motion was filed two years and five months after the commencement of the 99–1891 action by Rohm and Haas against American Cyanamid. This delay supports a finding of waiver.

Third, American Cyanamid was certainly represented by counsel at every stage of the delay. *See* Tr. at 14:9–10. They were first represented by Deming Sherman of the firm of Edwards & Angell. American Cyanamid then retained the Schnader firm from mid-April through September of 1995. Subsequently, American Cyanamid replaced the Schnader firm with the firm of Swidler and Berlin in September of 1995 and have presently retained the law firm of Sills Cummis Radin Tischman Epstein & Gross representing their interests before this Court.

As to the fourth factor, it is unclear why the delay occurred. What is clear is that American Cyanamid should have been aware, and very likely was aware, of this conflict from the time of the initial filing of the 99–1891 complaint on April 26, 1999. Despite the conflict in this case, American Cyanamid cannot make such a motion after two and a half years of litigation have

passed that calls for such a drastic action. The appearance that this motion has been brought for strategic purposes is too great for this Court to overlook. Therefore, this factor also favors waiver.

Finally, it is clear that Rohm and Haas would suffer significant prejudice if the Schnader firm were disqualified from this case. *See* Tr. at 14:15–15:12. According to John M. Armstrong, a Schnader attorney, Rohm and Haas has paid the Schnader firm over 1.2 million dollars in legal fees and has entrusted the Schnader firm with protecting their interest in the 99–1891 matter since April 26, 1999 and in general since April 11, 1995. *See* Transcript of November 5, 2001 oral argument ("Tr.") at 7:6–11. It would require a substantial effort and a tremendous expenditure of legal fees to prepare a new law firm to litigate this matter at this late stage of litigation.

The time delay in filing of this motion, two years and five months after commencement of suit, is consistent with other cases where the undue delay of filing a motion for disqualification was found to constitute waiver. *See, e.g., Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1115–16 (D.N.J.1993) (three-year delay); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1208–09 (E.D.Pa.1992) (two-year delay); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983) (two-and-one-half year delay); *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir.1978) (over two-year delay); *In re Zimmerman,* 81 B.R. 296, 300–01 (E.D.Pa.1987) (almost three-year delay); *Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 606 F.Supp. 852, 858–59 (N.D.Oh.1984) (delay of one year and nine months); *Glover v. Libman,* 578 F.Supp. 748, 767 (N.D.Ga.1983) (delay of thirteen months); *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034–35 (N.D.Ga.1981)

(delay of fifteen months). Accordingly, this Court finds that American Cyanamid's motion seeking disqualification of the Schnader firm is **denied** as waived. *See* Tr. at 36:17–20.

## CONCLUSION

For the foregoing reasons, this Court holds that American Cyanamid's motion to disqualify the Schnader firm in this matter is **denied** because despite the actual conflict that has arisen in this case, American Cyanamid's undue delay in bringing this motion constitutes waiver. An Order accompanies this Opinion.

## ORDER

This matter having come before the Court on motion by Defendant, American Cyanamid Company, to disqualify the law firm of Schnader, Harrison, Segal & Lewis, LLP, counsel for Plaintiff, Rohm and Haas Company, and the Court having heard oral argument on this motion on November 5, 2001, and the Court having carefully reviewed the entire record pertinent to this motion, and for good cause shown,

IT IS on this 20th day NOVEMBER, 2001;

**ORDERED** that Defendant, American Cyanamid Company's motion to disqualify the law firm of Schnader, Harrison, Segal & Lewis, LLP is **denied**.