**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-1861

CROWN BAY MARINA LP
                                                    Appellant

v.

REEF TRANSPORTATION; EVENING STAR - VICL; MORNING STAR - VICL

On Appeal from the
District Court
of the Virgin Islands
(D.C. No. 3:18-cv-00073)
The Honorable Ruth Miller

Argued
May 10, 2022

Before: JORDAN, and MATEY, and ROTH *Circuit Judges*

(Opinion filed:  July 19, 2022)

Alfred J. Stone, III **[Argued]**
Bolt Nagi
Suite 21
Merchants Financial Center
Tutu Park Mall, Suite 202
St. Thomas, VI 00802

A. Jeffrey Weiss
Building 1 Suite 15
9800 Buccaneer Mall
St. Thomas, VI 00802
     *Counsel for Appellant*

Justin K. Holcombe **[Argued]**
Dudley Newman & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00802

Lisa M. Komives
Dudley Newman & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00802
     *Counsel for Appellee*

————————

OPINION[*]

————————

MATEY, *Circuit Judge*.

Crown Bay Marina ("CBM") says two boats owned by Reef Transportation ("Reef") damaged its dock. The District Court decided CBM did not prove its case and, finding no errors in that decision, we will affirm.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

# I.

## A. The Storms Arrive

As Hurricane Irma headed towards St. Thomas, two of Reef's vessels headed to a dock owned by CBM. Upon arrival, Reef employees prepared the boats for the coming storm.[1] Before departing, a Reef captain signed CBM's License Agreement on Reef's behalf. The License Agreement stated that vessel owners would "make suitable arrangements . . . during tropical storms" and be "liable for all damages to the Boat Slip and other facilities owned by the Marina . . . caused by the Vessel." (App. at 10–11.)[2] Both Reef's boats survived Irma afloat with their mooring lines loosened but intact. And both sailed away before a second storm, Hurricane Maria, arrived two weeks later.

About a month after the Reef vessels left, CBM assessed the condition of the dock. A month after that, CBM's structural consultant Paul Ferreras documented damage requiring CBM to make extensive repairs.

## B. The Suit Follows

CBM sued Reef in the District Court of the Virgin Islands alleging Reef negligently secured the vessels and then breached the License Agreement by not paying for the damage they caused. The parties agreed to a bench trial. In preparation, the District Court set

---

[1] They placed loose items inside the enclosed pilot houses, tied impact-absorbing fenders, and moored each vessel to the dock. Reef's captains did not use anchors or remove the canvas awnings running the length of each vessel. CBM's dock manager observed that the Reef captains "did a proper job." (App. at 10.)

[2] The dock was not in perfect condition when the vessels arrived. Before the storm, CBM's then-Operations Manager took underwater and water-level photographs of the dock, which revealed cracked, deteriorated concrete and rusted rebar. CBM made no structural repairs before Hurricane Irma.

deadlines to identify all expert witnesses, direct and rebuttal. Nearly ten full months after those deadlines passed, and about 45 days before trial was scheduled to begin, CBM moved to designate Dr. Brian K. Haus as an expert.[3] The District Court denied the motion. Then, less than one month before trial, and more than two years after CBM filed its complaint, CBM moved to disqualify Reef's counsel citing a conflict of interest. According to CBM, Reef's attorneys had drafted the License Agreement that Reef now argues was unenforceable. The District Court denied the motion.

Following trial, the District Court found for Reef, holding that CBM had not proved breach or causation. CBM now appeals.[4]

## II.

We review the District Court's findings of fact, including rulings based on the "resolution of conflicting expert testimony and documentary evidence," for clear error. *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1254 (3d Cir. 1993). The same standard applies to the negligence finding, but we assess the applicable duty of care afresh. *Andrews v. United States*, 801 F.2d 644, 646 (3d Cir. 1986). Lastly, we review the District Court's denial of CBM's motions to designate an expert and disqualify Reef's counsel for abuse of discretion. *Quinn v. Consol. Freightways Corp. of Delaware*, 283 F.3d 572, 576 (3d Cir. 2002); *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).

### A.    Causation

---

[3] Dr. Haus performed aerodynamics simulations purporting to show that Reef's vessels could have caused the damage described in Ferreras's assessment.

[4] The District Court had jurisdiction in this maritime suit under 28 U.S.C. § 1333(1) and 48 U.S.C. § 1612(a). We have jurisdiction under 28 U.S.C. § 1291.

A maritime negligence claim requires proof that the defendant breached a duty owed the plaintiff, and that the breach caused the plaintiff injury in a "reasonably close" manner. *In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 207 (3d Cir. 2013). CBM argues that the District Court clearly erred when it "disregarded [CBM's forensic engineering expert] Ferreras's testimony . . . based on a misconception of his forensic methodology." (Opening Br. at 34.) And CBM insists that the District Court needed to credit Ferreras's testimony even though he never physically examined Reef's vessels, observed the preexisting damage to the dock, or performed any structural calculations.[5]

We disagree. While CBM is correct that none of these shortcomings necessarily precluded the District Court from crediting Ferreras's testimony, they provide ample explanation for the District Court's decision. And more abound. For one, Ferreras's assessment occurred long after Reef's vessels had left, and Reef's expert testified that the damage could have been caused by a storm surge pressing upward on the dock surfaces. For another, Ferreras's testimony was undercut by his admission that he had never seen properly built and maintained concrete docks fail while the mooring lines securing the

---

[5] CBM argues also that the District Court mistakenly believed that Ferreras's explanation of the damage required the vessels to have hit the dock during Hurricane Irma. The District Court was under no such illusion. Rather, the Court emphasized that Ferreras could not cite an example of a well-maintained concrete dock failing while the mooring lines held. That shows the Court merely disagreed with Ferreras's testimony that lateral forces exerted through the mooring lines caused the damage.

vessels held fast. All of which makes the District Court's conclusions not clearly erroneous.[6]

Finally, CBM argues that the District Court misapplied the *Louisiana* Rule. Derived from a Civil War-era Supreme Court decision, the *Louisiana* Rule places a rebuttable presumption of fault on a vessel that impacts a stationary object. *The Louisiana*, 70 U.S. 164, 173 (1865). The District Court mentioned the *Louisiana* Rule in dictum along the way to holding that it "is not persuaded that either of the Reef vessels in fact made contact with the . . . Dock." (App. at 20.) In other words, since this case involves no impact, it does not implicate the *Louisiana* Rule. And CBM does not challenge that reading; it acknowledges that Ferreras's testimony does not establish that the vessels made contact with the dock. All agree that, based on the admitted evidence, the *Louisiana* Rule does not impact this case. So do we.

## B.    Duty

CBM argues that the District Court applied the wrong standard of care when evaluating Reef's storm preparations. As the District Court explained, Reef's captains needed to take "reasonable care under the circumstances" in mooring the vessels. (App. at 16 (quoting 2 Thomas J. Schoenbaum, *Admiralty & Maritime Law*, § 14-2 (5th ed.

---

[6] Nor was the District Court's reference to Hurricane Maria problematic. In a passing footnote, the Court characterized the storm as a "Category 5" event. *Crown Bay Marina, L.P. v. Reef Transportation, LLC*, 2021 WL 1244011, at *12 n.28 (D.V.I. Apr. 1, 2021). Not so in St. Thomas, says CBM, where Maria produced mostly rain. But Maria was classified as a Category 5 storm, and, in any event, the District Court did not ascribe the storm's strength when it struck St. Thomas. More importantly, the District Court's other explanations for rejecting Ferreras's causation conclusions remain sufficient.

2011)).)[7] CBM contends the District Court deviated from that standard by adding an *in extremis* element and considering the impending hurricane as part of the "circumstances" against which reasonableness is measured.[8] But that did not occur, as the District Court agreed with Reef's expert "that Reef Transportation used reasonable logic, reasonable seamanship, [and] reasonable means to try and do everything they could to secure their vessels safely." (App. at 20–21, 179.) In other words, the District Court held that Reef committed no unreasonable errors for an *in extremis* element to excuse. There is no error in that conclusion.

## C.    CBM's Untimely Expert Designation Report

CBM sees an abuse of discretion in the denial of its months-late motion to designate Dr. Haus as an expert. We see no error.[9] The District Court properly held that Reef would be prejudiced by designating Dr. Haus as an expert only 45 days before the scheduled trial. The Court observed that CBM filed its motion the day motions *challenging* the validity of experts' methodology were due, and that, even if Reef could depose Dr. Haus, "it would be virtually impossible" to procure a rebuttal witness before trial. (App. at 31–32.)

---

[7] *See, e.g.*, *In re Frescati Shipping Co., Ltd.*, 718 F.3d at 211 ("The admiralty context is no different [than common law torts], requiring 'reasonable care under the particular circumstances.'" (quoting 1 Schoenbaum, *supra*, § 5-2)).

[8] An *in extremis* element excuses "errors in judgment committed by a vessel put in sudden peril through no fault of her own." 2 Schoenbaum, *supra*, § 14-3.

[9] *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (outlining factors including 1) prejudice or surprise; 2) the ability to cure the prejudice; 3) inefficiency; 4) bad faith or willfulness; and 5) the importance of the excluded testimony) (applying *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904–05 (3d Cir. 1977))).

Nor could Reef easily cure that prejudice without restarting discovery, taking more depositions and, of course, obtaining a rebuttal witness. All of which, the District Court noted, would disrupt the proceedings, and potentially delay trial. And the District Court held that CBM willfully missed the deadline, "deliberately wait[ing] until mediation was unsuccessfully concluded to pursue this additional line of evidence." (App. at 33.)[10]

Finally, the District Court acknowledged that Dr. Haus's testimony was potentially important to CBM, but fairly concluded that, given the willful and prejudicial delay, exclusion "is an appropriate result given plaintiff's cavalier treatment of its discovery obligations." (App. at 33.) We agree.

**D.     Motion to Disqualify**

CBM claims Reef's trial counsel cannot represent Reef here because the firm's predecessor, Dudley, Topper & Feuerzeig ("DTF"), once advised Crown Bay about the License Agreement that Reef now argues is unenforceable. We find no reason to disturb the District Court's careful consideration and factual findings.

The Model Rules of Professional Conduct[11] provide that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

---

[10] CBM pins the delay on COVID-19 even though CBM filed this action in September 2018, or one-and-one-half years before the pandemic. Reef, facing the same circumstances, managed to disclose its experts in accordance with the District Court's orders.

[11] The Model Rules of Professional conduct apply in the District Court of the Virgin Islands. *See* LRCi 83.2(a)(1).

MRPC 1.9(a). "Matters are substantially related . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9, Comment 3. Under this Rule, DTF's past representation of CBM was not substantially related to this case.

As the District Court explained, a DTF lawyer represented the President of CBM's sole general partner in acquiring and financing the marina and forming the CBM limited partnership in 1997. That work involved taking a form document for marina tenants and substituting the word "Virgin Islands" for "Texas," to change the governing law. (App. at 36, 134.) And a CBM employee sent a DTF attorney a fax that reads, "attached please find a copy of our License Agreement and a copy of our Rules and Regulations for your review." (App. at 37, 141.) The firm billed just 2.25 hours over the next three days on "evictions of problem tenant" and "[r]eview[ing] license agreement for termination provisions." (App. at 645.) DTF also represented CBM on some unrelated labor matters.

The District Court properly concluded that none of this is substantially related to this case. DTF helped form a limited partnership, aided the acquisition of the marina, and advised on employment and eviction matters. That makes this matter distinct from DTF's prior representation of CBM.

In addition, the District Court properly concluded there was no substantial risk that the prior representation gave Reef access to material confidential information. While the prior representation may have revealed details about CBM's finances and membership entities, neither is relevant to whether Reef reasonably moored its vessels or owed CBM

8

payment. The District Court did not abuse its discretion in denying CBM's motion to disqualify.[12]

## III.

For these reasons, we will affirm.

---

[12] We also agree with the District Court's alternative holding that CBM waived its right to move for disqualification. Waiver turns on factors including the length of the delay and resulting prejudice, and "whether the party seeking disqualification appears to use the disqualification motion as a tactical maneuver." *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 229–30 (D.N.J. 2001). The District Court held that CBM's nearly two-year delay lacked a reasonable explanation, and would produce obvious prejudice. None of those findings was clearly erroneous.